This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

### IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-36961**

**TERESA TAPIA and JOHNNY TAPIA PRESENTS, LLC, a New Mexico limited liability company,**

Plaintiffs-Appellees,

v.

**JERRY PADILLA, SR.,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Clay Campbell, District Judge**

Law Office of Angelo J. Artuso
Angelo J. Artuso
Albuquerque, NM

for Appellees

Domenici Law Firm, P.C.
Pete V. Domenici, Jr.
Reed C. Easterwood
Albuquerque, NM

for Appellant

### MEMORANDUM OPINION

**IVES, Judge.**

**{1}** Plaintiffs Teresa Tapia and Johnny Tapia Presents, LLC, sued Defendant Jerry Padilla Sr. for breach of contract and negligent misrepresentation, fraud, and violation of the Unfair Trade Practices Act (UPA), NMSA 1978, §§ 57-12-1 to -26 (1967, as amended through 2019). Plaintiffs filed a motion for summary judgment on each claim, Defendant did not file a response, and the district court granted the motion. On appeal,

Defendant argues that the district court erroneously entered summary judgment as to the fraud and UPA claims. We disagree that the district court erred by awarding summary judgment to Plaintiffs on the fraud claim but agree with Defendant with respect to the UPA claim. Because we hold that Plaintiffs were not entitled to summary judgment on their UPA claim, we further hold that the district court should reconsider its award of attorney fees in Plaintiffs' favor. We affirm in part, reverse in part, and remand for further proceedings.

**DISCUSSION**[1]

**I.      The District Court Did Not Err by Granting Plaintiffs' Motion for Summary Judgment on the Fraud Claim**

**{2}**      Defendant argues that summary judgment for Plaintiffs on their fraud claim was improper because there remain genuine issues of material fact concerning that claim. We disagree.

**{3}**      "We review an order granting summary judgment de novo." *Santa Fe Pac. Tr., Inc. v. City of Albuquerque*, 2014-NMCA-093, ¶ 16, 335 P.3d 232. Summary judgment is appropriate where "there is no genuine issue as to any material fact[,] and . . . the moving party is entitled to a judgment as a matter of law." Rule 1-056(C) NMRA. Appellate courts "view the facts in a light most favorable to the party opposing summary judgment and draw all reasonable inferences in support of a trial on the merits." *Freeman v. Fairchild*, 2018-NMSC-023, ¶ 14, 416 P.3d 264 (internal quotation marks and citation omitted). "To obtain summary judgment, the moving party must meet an initial burden of establishing a prima facie case." *Id.* ¶ 16 (internal quotation marks and citation omitted). If the moving party bears the burden of persuasion on a claim, that party cannot establish prima facie entitlement to summary judgment on the claim unless it "support[s] its motion with credible evidence" demonstrating that, "on all the essential elements of its [claim,] . . . no reasonable jury could find for the nonmoving party." *Farmington Police Officers Ass'n v. City of Farmington*, 2006-NMCA-077, ¶ 15, 139 N.M. 750, 137 P.3d 1204 (internal quotation marks and citation omitted).[2]

---

1Because the parties are familiar with the factual background, this memorandum opinion does not include a background section. We describe the pertinent facts in the discussion section.

2Although Defendant's briefing could be read to imply that we should apply the substantive standard of proof—clear and convincing evidence—that would be applicable at trial, Defendant has not developed an argument on this point, and we decline to do so for him. *See Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶ 70, 309 P.3d 53. It is not necessary to address the merits of this issue because we are satisfied that, on the facts of this case, summary judgment was proper even under the clear and convincing standard—i.e. no reasonable jury could reach anything other than an "abiding conviction as to the truth of [Plaintiffs'] claim." *Chavez v. Prods. Corp.*, 1989-NMSC-050, ¶ 19, 108 N.M. 643, 777 P.2d 371 (reviewing directed verdict).

**{4}**     Where a nonmovant fails to respond to a motion for summary judgment after "adequate notice and opportunity to be heard,"[3] the district court may enter summary judgment on the movant's prima facie case. *Freeman*, 2018-NMSC-023, ¶ 21. In that circumstance, "[a]ll material facts set forth in the statement of the moving party shall be deemed admitted[.]" Rule 1-056(D)(2). Accordingly, because Defendant failed to respond to Plaintiffs' motion, the following, properly-supported[4] facts are not in dispute. In 2010, Defendant represented to Teresa and Johnny Tapia that he could be Johnny's father, which led Johnny to request that Defendant take an at-home paternity test that Teresa and Johnny purchased. After he and Johnny took samples of their DNA, Defendant took custody of the samples and told Teresa that he would mail them to the private testing company that produced the test kit. Around four days later, Teresa's doorbell rang, and she found a U.S. Express Mail envelope containing documents purporting to be the results of that test. When Teresa called Defendant to let him know the results had arrived, Defendant came to Teresa's home more quickly than one would expect given the distance between their homes.

**{5}**     The results showed a 99.997 percent probability that Defendant was Johnny's father. But they were falsified. Although Teresa and Johnny had purchased the paternity test at a Walgreen's store, the supposed results indicated that they came from DNA Diagnostics Center (DDC) in Fairfield, Ohio, and Walgreen Co. did not sell any DDC test kits in New Mexico until 2014. The documents containing the supposed results displayed Johnny and Defendant's names and a DDC case identification number, but that case number corresponded to a different test from 2006, and DDC did not recycle

---

3Our rules of civil procedure afford litigants protection from summary judgment by allowing them, after they have failed to respond despite adequate notice and opportunity to be heard, to request an extension of the time limit for responding to a motion for summary judgment or attempt to demonstrate excusable neglect. *Freeman*, 2018-NMSC-023, ¶¶ 23, 25. Defendant neither requested an extension nor attempted to demonstrate excusable neglect here. While we recognize that Defendant's failure to respond may be attributable to his decision to represent himself in the district court, "a pro se litigant is bound by all of the rules applicable to litigants represented by attorneys." *Clayton v. Trotter*, 1990-NMCA-078, ¶ 12, 110 N.M. 369, 796 P.2d 262.

We note, however, that, in *Freeman*, our Supreme Court embraced the procedure adopted by this Court in *Lujan v. City of Albuquerque*, 2003-NMCA-104, 134 N.M. 207, 75 P.3d 423, under which "the moving party should file a separate written motion and allow the non-moving party fifteen days to respond" if it "wants the district court to grant summary judgment in the absence of a response[.]" *Freeman*, 2018-NMSC-023, ¶ 24. The *Freeman* court reasoned that this procedure "ensures adequate notice and opportunity to be heard prior to the entry of summary judgment in the absence of a response." *Id.* ¶ 25. Defendant does not argue that Plaintiffs failed to comply with this procedure or that a failure to do so bars the entry of summary judgment on the ground that a movant has made out a prima facie case. We therefore do not consider whether this portion of *Freeman* has any bearing on this case.

4We have examined the affidavits, exhibits, and portions of the record cited in support of Plaintiffs' motion for summary judgment and, because we are satisfied that it is appropriate to do so, rely on the same in setting forth the facts that established Plaintiffs' prima facie case. Defendant asserts that Plaintiffs' affidavits "are inadmissible hearsay[,]" but that assertion is the extent of his argument on the issue, and we therefore decline to consider it—not least because it appears to be directly at odds with Rule 1-056(C), which sanctions the use of "affidavits . . . [to] show that there is no genuine issue as to any material fact." Insofar as Defendant argues that the district court should have taken other portions of the record into account in determining whether summary judgment was appropriate, that argument is foreclosed by Rule 1-056(D)(2), under which Defendant is deemed to have waived his right to contest the supported material facts set out in Plaintiffs' motion.

case numbers. The documents were printed in black and white and notarized, even though DDC usually sent test results in color and without notarization. One of the testing documents indicated that it had originated from both DDC and Identigene, a DDC competitor. And the envelope that was delivered to Teresa's home had never been processed by the U.S. Postal Service.

**{6}**     Believing that Defendant was Johnny's father, Teresa provided Defendant with loans and other financial support totaling roughly $68,000, which she would not have done had she not believed that he was a member of her family. After Johnny's death in 2012, Defendant refused Teresa's multiple requests that he take another DNA test to determine his paternity. His refusal persisted until midway through the present litigation, when the district court ordered that Defendant submit to another paternity test. This test excluded Defendant as Johnny's father.

**{7}**     A prima facie case of fraud is apparent on these undisputed facts. The elements of fraud are: "(1) a misrepresentation of fact, (2) either knowledge of the falsity of the representation or recklessness on the part of the party making the misrepresentation, (3) intent to deceive and to induce reliance on the misrepresentation, and (4) detrimental reliance on the misrepresentation." *Williams v. Stewart*, 2005-NMCA-061, ¶ 34, 137 N.M. 420, 112 P.3d 281. Here, Defendant made a misrepresentation of fact by claiming to be Johnny's father. The court-ordered DNA test demonstrates that this representation was false, and, given the obvious deficiencies in the 2010 results, no reasonable jury could conclude otherwise. The only conceivable reason Defendant could have had for making this misrepresentation was to deceive Johnny and Teresa into believing that he was Johnny's father and, on the basis of their reliance on that belief, to obtain the treatment commensurate with that status. And Teresa did, in fact, rely on Defendant's misrepresentation to her detriment by providing Defendant with financial support that she would not have conferred had she not believed that Defendant was a member of her family. The only remaining issue, therefore, is whether a reasonable jury would be compelled to conclude that Defendant acted with knowledge of, or recklessness toward, the falsity of his representation. We conclude that it would.

**{8}**     The only reasonable inference that can be drawn from the undisputed facts is that Defendant based his representation that he was Johnny's father on the 2010 paternity test when he knew that the results of that test were false. *See* 3 Dan B. Dobbs et al., *The Law of Torts* § 665 (2d ed. 2011) (stating that circumstantial evidence, when it is strong enough, "can often prove knowing falsehood"). A misrepresentation is fraudulent if the person making it "knows that he [or she] does not have the basis . . . that he [or she] states or implies" for making it. Restatement (Second) of Torts § 526(c) (1977). Thus, when a misrepresentation is "expressly stated to be based upon the maker's personal knowledge of the fact in question *or even upon his personal investigation of the matter*[,]" the misrepresentation "is fraudulent even though the maker is honestly convinced of its truth[.]" *Id.* cmt. f (emphasis added). In this case, Defendant's insistence that he was Johnny's father after the appearance of the falsified results demonstrates that he used those results as the basis for his claim of paternity. Since Defendant had custody of the test samples and purported to have submitted them

to be tested, the results were equivalent to a statement that his personal investigation into his paternity supported his claim that he was Johnny's father. And his custody of the samples, when coupled with the deficiencies in the test results, the manner in which those results were returned, and his efforts to avoid subsequent DNA testing, makes it apparent that Defendant feared that subsequent testing would refute his claim of paternity because he knew the supposed results of the 2010 test were false. Although he may have believed he was Johnny's father, Defendant used the 2010 paternity test to bolster his assertion of paternity while knowing that the results of that test had been falsified. Because Defendant expressly based the misrepresentation that he was Johnny's father on something that he knew to be false, we conclude that Defendant had the requisite mental state for fraud.

**{9}** In light of the undisputed material facts supporting Plaintiffs' fraud claim, we conclude that no reasonable jury could have found for Defendant on that claim. *See Farmington Police Officers Ass'n*, 2006-NMCA-077, ¶ 15. We therefore conclude that Plaintiffs are entitled to judgment as a matter of law. Accordingly, we hold that the district court correctly entered summary judgment in favor of Plaintiffs.

**{10}** Defendant next argues that the damages awarded on the fraud claim were not supported by substantial evidence and were duplicative of those awarded on Plaintiffs' claims for breach of contract and negligent misrepresentation, which arose from a promissory note between Defendant and Teresa. Defendant does not contest Plaintiffs' assertion that these arguments were not preserved in the district court but argues that we should address them nonetheless, both because "it was incumbent on the district court to hold a separate hearing and determine damages with specificity [as to each] discrete claim[,]" and because "[d]ouble recovery is evident." These assertions make up the entirety of Defendant's argument on the matter, and he fails to cite any authority in support of the proposition that these issues are not subject to our preservation rules. *See generally* Rule 12-321(A) NMRA ("To preserve an issue for review, it must appear that a ruling or decision by the trial court was fairly invoked."); *In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329 ("Issues raised in appellate briefs which are unsupported by cited authority will not be reviewed by us on appeal."). We decline to develop an argument on Defendant's behalf, *see Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076, and therefore affirm the district court's damages award. *Cf. Kahrs v. Sanchez*, 1998-NMCA-037, ¶ 38, 125 N.M. 1, 956 P.2d 132 (holding that the defendant waived its right to challenge the sufficiency of the evidence supporting an equitable reduction in damages); *Batchelor v. Charley*, 1965-NMSC-001, ¶ 6, 74 N.M. 717, 398 P.2d 49 (declining to consider the defendants' argument, because it was not raised in the district court, that the plaintiff had erroneously been permitted to recover a debt under a promissory note that a tribal court had already incorporated into its judgment over the parties).

## II. Plaintiffs Do Not Have Standing Under the UPA

**{11}** Defendant argues that we should reverse the summary judgment for Plaintiffs on their UPA claim because Plaintiffs did not have standing under the UPA. We agree.

**{12}** "[W]hen a statute creates a cause of action and designates who may sue, the issue of standing becomes interwoven with that of subject matter jurisdiction[,]" and standing "becomes a jurisdictional prerequisite to an action." *Deutsche Bank Nat'l Tr. Co. v. Johnston*, 2016-NMSC-013, ¶ 11, 369 P.3d 1046 (internal quotation marks and citation omitted). The UPA creates a cause of action for an injunction against "an unfair or deceptive trade practice or . . . an unconscionable trade practice" that is likely to damage the plaintiff. Section 57-12-10(A). The UPA makes standing a jurisdictional prerequisite by designating persons "likely to be damaged" by an unfair trade practice as those who may sue. *Id.*; *see also Gandydancer, LLC v. Rock House CGM, LLC*, 2019-NMSC-021, ¶ 8, 453 P.3d 434 ("[T]here is no significant difference between having standing to sue and having a cause of action under the UPA."). Because standing is a jurisdictional prerequisite to Plaintiffs' UPA claim, it was unnecessary for Defendant to raise the issue in the district court. *See* Rule 12-321(B)(1) ("Subject matter jurisdiction of the [district] court may be raised at any time."). We review de novo whether Plaintiffs have standing under the UPA. *Gandydancer*, 2019-NMSC-021, ¶ 6.

**{13}** "New Mexico cases have historically interpreted the UPA to focus exclusively on consumer protection[.]" *Id.* ¶ 29. "Consistent with its purpose as consumer protection legislation, the UPA gives standing only to buyers of goods or services." *Santa Fe Custom Shutters & Doors, Inc. v. Home Depot*, 2005-NMCA-051, ¶ 17, 137 N.M. 524, 113 P.3d 347 (citation omitted). Thus, to have standing under the UPA, "the plaintiff must have sought or acquired goods or services and the defendant must have provided goods or services." *Hicks v. Eller*, 2012-NMCA-061, ¶ 20, 280 P.3d 304.

**{14}** Here, the district court determined that "Defendant's actions violate[d] the [UPA] by[,] among other things, causing confusion or misunderstanding as to the sponsorship or approval of goods or services, and as to his affiliation, connection, or association with Johnny Tapia." *See generally* § 57-12-2(D)(3), (5) (defining "unfair or deceptive trade practice" to include "causing confusion or misunderstanding as to affiliation, connection or association with or certification by another" and "representing . . . that a person has a sponsorship, approval, status, affiliation or connection that the person does not have"). However, the undisputed facts do not establish that Plaintiffs, *as consumers*, were likely to be damaged by Defendant's misrepresentations in his provision of goods and services. And Plaintiffs did not contend in their motion for summary judgment on their UPA claim that they are likely to be harmed as a result of seeking goods or services provided by Defendant.[5] Instead, the legal theory Plaintiffs relied on in their motion appears to have been that Plaintiffs would be injured if Defendant was allowed to personally profit from *other* consumers' reliance on Defendant's unfair trade practices. Because Plaintiffs' claim is not based on their own consumption of Defendant's provision of goods and services, we hold that Plaintiffs lack standing under the UPA. *Cf. Santa Fe Custom Shutters & Doors*, 2005-NMCA-051, ¶ 18 (holding that the plaintiff lacked standing under the UPA for its claim related to the defendant's marketing of the

---

[5]Plaintiffs' motion references a 2010 transaction in which Johnny paid Defendant $6,500 toward the promotion of a boxing match. Because Plaintiffs claim injury under the UPA on their own behalf, as opposed to Johnny's, this transaction is not relevant to our analysis.

plaintiff's goods and services because the plaintiff had not sought to acquire goods or services from the defendant).

**{15}** Insofar as Plaintiffs allege a competitive injury, we apply the recent decision of our Supreme Court in *Gandydancer LLC*, 2019-NMSC-021. Plaintiffs object to Defendant's representation that he is Johnny's father in his promotion of boxing events. As Johnny Tapia Presents, LLC, is also a promoter of boxing matches, it appears that Plaintiffs understand their injury, at least in part, to be a competitive one. However, our Supreme Court clarified the scope of standing under the UPA in *Gandydancer* by rejecting the proposition that the UPA affords standing to competitors.[6] *Id.* ¶¶ 10, 39 (holding that "the UPA does not provide a cause of action for competitive injury claims" because the Legislature deliberately excluded language permitting competitor standing from the UPA). To the extent that Plaintiffs' claim is based on competitive injury, *Gandydancer* controls, and we therefore hold that Plaintiffs are without standing under the UPA to pursue a claim of competitive injury.

**{16}** Having concluded that Plaintiffs lack standing, we reverse the district court's order granting Plaintiffs' motion for summary judgment on their UPA claim.[7] Accordingly, we vacate the permanent injunction against Defendant.[8]

### III.  The District Court Must Reconsider Its Award of Attorney Fees

**{17}** Because we reverse the order granting Plaintiffs' motion for summary judgment on their UPA claim, Plaintiffs are no longer entitled to an award of the attorney fees and costs associated with prosecuting that claim. *See* § 57-12-10(C) (entitling litigants who complain of unfair trade practices to recover attorney fees only if they prevail). On remand, the district court must therefore reconsider its award of attorney fees. *See Klinksiek v. Klinksiek*, 2005-NMCA-008, ¶ 29, 136 N.M. 693, 104 P.3d 559 (holding that it was "appropriate for the district court to reconsider the amount of the attorney fees" after this Court affirmed in part and reversed in part); *Rabie v. Ogaki*, 1993-NMCA-096, ¶ 18, 116 N.M. 143, 860 P.2d 785 (stating that, "ordinarily[,] the district court should reconsider an award of attorney[] fees and expenses" after this Court reverses a judgment). In doing so, the district court should determine the amount of fees to which Plaintiffs are entitled pursuant to the promissory note, under which Defendant agreed "to pay all costs and expenses, including reasonable attorney[] fees, incurred by [Teresa] in the enforcement of the provisions of the Note[.]" *See Hinkle, Cox, Eaton, Coffield & Hensley v. Cadle Co. of Ohio*, 1993-NMSC-010, ¶ 32, 115 N.M. 152, 848 P.2d 1079 (stating that an award of fees "should be limited, to the extent feasible, to work related to" the claims for which a party is entitled to fees); *Dean v. Brizuela*, 2010-NMCA-076, ¶ 18, 148 N.M. 548, 238 P.3d 917 (recognizing that "in certain cases it

---

[6]The district court did not have the benefit of this clarification because it entered its judgment before our Supreme Court issued its opinion in *Gandydancer*.

[7]Defendant argues that the district court erred by ordering him to submit to a paternity test and that the error prejudiced his defense against Plaintiffs' UPA claim. Having concluded that Plaintiffs do not have standing under the UPA, we need not address this issue.

[8]We express no opinion as to whether the prospective relief Plaintiffs seek might be available under a different legal theory.

could be difficult or impossible to segregate the work performed on different claims because such work was inextricably intertwined" and that "[t]he burden of showing this to be the case . . . is with the attorney who seeks the attorney fee award" (internal quotation marks and citation omitted)); *Hedicke v. Gunville*, 2003-NMCA-032, ¶ 30, 133 N.M. 335, 62 P.3d 1217 ("[A]ssessing reasonable attorney fees need not be mechanistic or formulaic, but is governed by, and should be apportioned according to, the facts and circumstances of the case and the extent to which the parties, in fact, prevailed.").

**{18}** We vacate the award of attorney fees and costs.

**CONCLUSION**

**{19}** We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

**{20}  IT IS SO ORDERED.**

**ZACHARY A. IVES, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Chief Judge**

**MEGAN P. DUFFY, Judge**