The slip opinion is the first version of an opinion released by the Clerk of the Court of Appeals. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Clerk of the Court for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number:_____

Filing Date: **April 10, 2024**

**No. A-1-CA-41177**

**TODD LOPEZ, Personal Representative of the Wrongful Death Estate of RICHARD PAIZ and LORETTA PAIZ, individually,**

Plaintiffs-Appellants,

v.

**PRESBYTERIAN HEALTHCARE SERVICES; HOSPITALIST MEDICINE PHYSICIANS OF TEXAS, PLLC d/b/a SOUND PHYSICIANS HOLDINGS LLC; KENNETH DALE; and KARAN MAHAJAN,**

Defendants-Appellees.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Francis J. Mathew, District Court Judge**

Bruce E. Thompson Law Firm, P.C.
Bruce E. Thompson
Albuquerque, NM

The Law Office of Amalia S. Lucero, L.L.C.
Amalia S. Lucero
Placitas, NM

for Appellants

Rodey, Dickason, Sloan, Akin & Robb, P.A.
Jocelyn Drennan
Jeffrey M. Croasdell
Albuquerque, NM

for Appellee Presbyterian Healthcare Services

Miller Stratvert P.A.
Jennifer D. Hall
Kelsey D. Green
Laureana A. Larkin
Albuquerque, NM

for Appellants Hospitalist Medicine Physicians
of Texas d/b/a Sound Physicians Holdings LLC
and Karen Mahajan

Priest & Miller, LLP
Ada B. Priest
Dominic B. Romero
Albuquerque, NM

for Appellee Kenneth Dale

**OPINION**

**WRAY, Judge.**

{1}    This case involves the relationship between the appointment of a personal representative (PR) under the Wrongful Death Act (WDA), *see* NMSA 1978, §§ 41-2-1 to -4 (1882, as amended through 2001); *Chavez v. Regents of the Univ. of N.M.*, 1985-NMSC-114, 103 N.M. 606, 711 P.2d 883; *see also* Rule 1-017(B) NMRA, and statutory standing as a jurisdictional prerequisite to bringing a cause of action in New Mexico state court, *see Deutsche Bank Nat'l Tr. Co. v. Johnston*, 2016-NMSC-013, ¶ 11, 369 P.3d 1046. Plaintiffs Loretta Paiz, individually, and Todd Lopez, as the PR of the "Wrongful Death Estate of Richard Paiz," (collectively, Plaintiffs) filed claims, including a wrongful death action, against Defendants Presbyterian Healthcare Services, Sound Physicians Holdings LLC, Kenneth Dale, and Karan Mahajan (collectively, Defendants). Plaintiffs, however, did not seek the appointment of Mr. Lopez as the PR under the WDA[1] until months into the litigation. The district court determined that Plaintiffs' late request to appoint a PR deprived the court of jurisdiction over the wrongful death action and dismissed the

---

[1]A PR appointed under the WDA and a PR appointed as part of a probate proceeding are separate and encompass different responsibilities. *See Oakey v. Tyson*, 2017-NMCA-078, ¶¶ 23, 30, 404 P.3d 810 (explaining that under Rule 1-017(B), separate appointment under the WDA is required and that a probate PR and a WDA PR have different responsibilities). In this opinion, we refer only to PRs appointed under the WDA.

wrongful death claim with prejudice. On interlocutory appeal, we consider whether a failure to petition for appointment of a PR before or simultaneously with the filing of the original complaint brought under the WDA is a jurisdictional defect that requires dismissal of the action. Holding that it is not, we reverse.

**BACKGROUND**

{2}     This case began with the death of Richard Paiz at the University of New Mexico Hospital on April 21, 2019. Three years later, in April 2022 Plaintiffs filed a complaint for wrongful death against Defendants. The primary plaintiff in the caption was identified as "TODD LOPEZ, as Personal Representative of the Wrongful Death Estate of Richard Paiz." Four months after that, in August 2022 Defendant Sound Physicians Holdings LLC served interrogatories and asked Mr. Lopez to "[d]escribe all court proceedings leading to your appointment as [PR] of the Estate of Richard Paiz." Mr. Lopez responded in October 2022 that "the petition for appointment as [PR] of the wrongful death estate was filed with the wrongful death action, all parties had notice in the original complaint, and formal court appointment is pending." Despite this response, Plaintiffs did not request appointment of Mr. Lopez as the PR until two days after the date on the discovery response—approximately six months after the complaint was filed. All Defendants opposed the motion to appoint and argued that Rule 1-017(B) required a request to appoint a PR before or "with" the complaint and that Mr. Lopez's discovery

2

responses had "stated incorrectly that the petition for his appointment as [PR] was filed with the wrongful death action."

{3}     During the hearing on Plaintiffs' motion to appoint, "the [d]istrict [c]ourt sua sponte raised the issue whether the court lacked subject matter jurisdiction to appoint the [PR]." The district court referred the parties to our Supreme Court's opinion in *Johnston*, a foreclosure case that deals with standing, and offered the parties the following quote from that case: "when a statute creates a cause of action and designates who may sue, the issue of standing becomes interwoven with that of subject matter jurisdiction. Standing then becomes a jurisdictional prerequisite to an action." 2016-NMSC-013, ¶ 11 (text only) (citation omitted). Based on this language, the district court questioned "whether [it had] jurisdiction to do anything with respect to the wrongful death action." The district court requested and received supplemental briefing on this issue from the parties, and Plaintiffs filed an additional motion to amend the complaint to add a request to appoint a PR. At a second hearing, the district court determined that based on *Johnston* "and Rule 1-017(B), which . . . does clarify who and when a [PR] may bring—or a party may bring a wrongful death action under the [WDA]," the court did not have jurisdiction to proceed on the wrongful death claim and the motion to amend was "moot." The district court dismissed the wrongful death action with prejudice but certified the matter for interlocutory appeal, which this Court granted.

**DISCUSSION**

{4}     The parties dispute whether a timely petition for appointment of a PR, as set forth in Rule 1-017(B), is a jurisdictional prerequisite to bringing a wrongful death action. Our Supreme Court in *Chavez* rejected the view that the requirement for a PR under the WDA is jurisdictional and that without a PR a suit is a "nullity," because such a view of the PR "requirement of the [WDA] is unnecessarily restrictive" and the rules "dictate[d] a different result." 1985-NMSC-114, ¶ 11. Defendants argue that *Chavez* was decided almost forty years ago and newer authorities—*Johnston* and amendments to Rule 1-017—have "analytically superseded" *Chavez* by reaffirming statutory standing as a jurisdictional prerequisite and mandating the timing for appointing a PR. To consider Defendants' arguments, we first review longstanding WDA principles and procedures as well as the more recent developments in standing analysis. Second, we consider the WDA and standing principles together in order to determine whether the district court properly dismissed Plaintiffs' WDA claim. *See Ottino v. Ottino*, 2001-NMCA-012, ¶ 6, 130 N.M. 168, 21 P.3d 37 (considering de novo the question of the district court's jurisdiction).

4

## I. Longstanding and Developing Legal Landscapes

{5} We first set forth the WDA and its context, then consider *Chavez* and the governing rules for amending pleadings and parties—Rule 1-015 NMRA and Rule 1-017—and last outline New Mexico's unique view of standing.

### A. The Wrongful Death Act and Appointment of a PR

{6} In 1882, New Mexico adopted the WDA in derogation of the historical common law principle "that the right of recovery died with the injured party" and "the theory that a person harmed by another's death had no right to recover." *Est. of Brice v. Toyota Motor Corp.*, 2016-NMSC-018, ¶¶ 18, 19, 373 P.3d 977. Section 41-2-1 states that

> [w]henever the death of a person shall be caused by the wrongful act, neglect or default of another, although such death shall have been caused under such circumstances as amount in law to a felony, and the act, or neglect, or default, is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then, and in every such case, the person who, or the corporation which, would have been liable, if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured.

This provision ensures that the death of an injured person will not prevent a cause of action against a responsible party. "The WDA permits the cause of action to survive." *Est. of Lajeuenesse ex rel. Boswell v. Bd. of Regents of Univ. of N.M.*, 2013-NMCA-004, ¶ 10, 292 P.3d 485.

{7} A WDA cause of action "accrues as of the date of death," § 41-2-2, and "[e]very action mentioned in Section 41-2-1 . . . shall be brought by and in the name of the [PR] of the deceased person." Section 41-2-3. Thus, although the deceased suffered the injury that created the cause of action, a PR must stand in their place to bring the action and distribute any proceeds to the statutorily identified beneficiaries. *See Est. of Lajeuenesse*, 2013-NMCA-004, ¶¶ 12, 14 (explaining that the PR "acts as a nominal party for the benefit of the statutory beneficiaries" and that "[f]or the purposes of preservation of the right of action, the [PR] replaces the injured deceased under the WDA"). The PR pursues "the same cause of action exactly as it would have been possessed by the decedent . . . , and any limitations on the decedent's personal right to maintain an action will survive as well." *Est. of Krahmer ex rel. Peck v. Laurel Healthcare Providers, LLC*, 2014-NMCA-001, ¶ 6, 315 P.3d 298. For this reason, the PR's rights under the WDA are entirely "derivative of the decedent's." *Id.* ¶ 8.

{8} In *Chavez*, our Supreme Court addressed whether the failure to seek appointment of a PR within the WDA statute of limitations bars suit. 1985-NMSC-114, ¶ 2. The *Chavez* parties brought a wrongful death action but after litigating for approximately two years, the defendants moved to dismiss the case "based on [the] plaintiffs' failure to obtain, within the time limitation period, court appointment of a [PR] to sue." *Id.* ¶ 1. The district court denied the defendants' motion but certified

the issue for interlocutory appeal. *Id.* This Court determined that the failure to appoint a PR was jurisdictional—a position our Supreme Court explicitly rejected as "unnecessarily restrictive." *Id.* ¶ 11. Instead, the *Chavez* Court held that "[t]he [PR] is only a nominal party who was selected by the Legislature to act as the statutory trustee for the individual statutory beneficiaries," and that "[i]t is merely incidental that a [PR] is named to bring a wrongful death action." *Id.* ¶ 8 (internal quotation marks and citation omitted). The *Chavez* Court observed that "New Mexico follows the principle that in the interests of justice and to promote the adjudication of a case upon its merits, amendments should be freely granted and allowed to relate back to the date a complaint was originally filed" when the appropriate rules are satisfied. *Id.* ¶ 14. As a result, under *Chavez*, the appointment of a PR after a WDA complaint has been filed "may be accomplished" under either Rule 1-015 or Rule 1-017. *Id.* ¶ 20.

{9} Rule 1-015(C) deals with "[r]elation back of amendments." The rule permits amendments to a complaint "to relate back to the date a complaint was originally filed so as to avoid the bar of the statute of limitations" provided that "the real parties in interest received sufficient notice of the proceedings or were involved unofficially at an early stage." *Chavez*, 1985-NMSC-114, ¶ 14. In that circumstance, "the statute of limitations should not be used mechanically to bar an otherwise valid claim." *Id.* Rule 1-017(A) addresses the parties' capacity to sue and explains that

7

> [w]here it appears that an action, by reason of honest mistake, is not prosecuted in the name of the real party in interest, the court may allow a reasonable time for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

The *Chavez* Court noted that the New Mexico Rules of Civil Procedure are modeled after the Federal Rules and that "[a] majority of the federal courts allow a change in a plaintiff's capacity to sue to relate back to the action's commencement under [Fed. R. Civ. P. 15(C) and 17(A)]." *Chavez*, 1985-NMSC-114, ¶ 17.

{10}    In 2014, our Supreme Court adopted the current Rule 1-017(B), which addresses the appointment of a PR directly and states that "[a]n action for wrongful death brought under Section 41-2-1 . . . shall be brought by the [PR] appointed by the district court for that purpose under Section 41-2-3." Rule 1-017(B) further instructs that "[a] petition to appoint a [PR] may be brought before the wrongful death action is filed or with the wrongful death action itself." The committee commentary to the amended Rule 1-017 emphasizes two points that are helpful in understanding this rule. *See Vigil v. Miners Colfax Med. Ctr.*, 1994-NMCA-054, ¶ 12, 117 N.M. 665, 875 P.2d 1096 ("While committee commentary is not binding on this Court, it is persuasive authority."). First, a petition for appointment under Section 41-2-3 can be brought "'with the wrongful death action itself, assuming that all necessary parties are subject to joinder in the forum where the wrongful death action is brought.'" Rule 1-017 comm. cmt. 2014 amend. (quoting *In re Est. of*

8

*Sumler*, 2003-NMCA-030, ¶ 10 n.1, 133 N.M. 319, 62 P.3d 776). Second, "[f]ailure to appoint a [PR] before the filing of a wrongful death action is not a jurisdictional defect and, under proper circumstances, may be accomplished after the action is filed." Rule 1-017 comm. cmt. 2014 amend. (citing *Chavez*, 1985-NMSC-114).

{11} To summarize the preceding, the WDA provides a cause of action for an individual whose death is allegedly caused by the wrongful act, neglect, or default of another, which is brought by a PR on behalf of the deceased individual. *See* §§ 41-2-1, -3. Under *Chavez*, the appointment of the PR is not jurisdictional and any mistake or failure to appoint a PR can be resolved by amendment under Rule 1-015 and substitution of the appropriate real party in interest under Rule 1-017(A). *See Chavez*, 1985-NMSC-114, ¶¶ 2, 11. Defendants challenge the *Chavez* construction of the WDA procedures both because the 2014 amendment to Rule 1-017 permits the appointment of a PR before or "with" the filing of a wrongful death action, *see* Rule 1-017(B), and based on more recent articulations by our Supreme Court about statutory standing and jurisdiction, which we next set forth.

**B.      Standing and Its Relationship With Subject Matter Jurisdiction**

{12} New Mexico state courts are broadly courts of general subject matter jurisdiction and "enjoy the presumption of jurisdiction, in the absence of proof to the contrary." *Ottino*, 2001-NMCA-012, ¶ 6 (internal quotation marks and citation omitted). As Defendants note, the district courts "have original jurisdiction in all

9

matters and causes not excepted in th[e] constitution" as well as statutory jurisdiction in "special cases and proceedings as provided by law." N.M. Const. art. VI, § 13. Separately, "standing" is a doctrine that "allows plaintiffs to enforce a right in the courts, if it is derived from common law or statute." *Key v. Chrysler Motors Corp.*, 1996-NMSC-038, ¶ 11, 121 N.M. 764, 918 P.2d 350. Standing in our state courts is generally prudential and not jurisdictional, *see ACLU of N.M. v. City of Albuquerque*, 2008-NMSC-045, ¶ 9, 144 N.M. 471, 188 P.3d 1222, but "may be a jurisdictional matter when a litigant asserts a cause of action created by statute." *Id.* ¶ 9 n.1; *see also Johnston*, 2016-NMSC-013, ¶ 11.

{13} In 2016, our Supreme Court in *Johnston* reaffirmed this principle and observed that "when a statute creates a cause of action and designates who may sue, the issue of standing becomes interwoven with that of subject matter jurisdiction. Standing then becomes a jurisdictional prerequisite to an action."[2] *Johnston*, 2016-

---

[2]As noted by the concurrence, for this proposition, our Supreme Court in *Johnston* quoted *ACLU of N.M.*, which in turn quoted *In re Adoption of W.C.K.*, 2000 PA Super 68. The Supreme Court of Pennsylvania later overruled this statement of law in *In re Nomination Petition of deYoung*, 903 A.2d 1164 n.5 (Pa. 2006) ("This Court has never adopted the reasoning regarding standing intertwined with subject matter jurisdiction . . . and we specifically renounce it here."). This overruling was recognized by the Pennsylvania Superior Court, and the concept of standing as a jurisdictional prerequisite was again renounced. *In re Adoption of Z.S.H.G.*, 2011 PA Super 278, 34 A.3d 1283, 1288-89 (per curiam). Our opinion in the present case is based on the premise that is set forth in *ACLU of N.M.* and *Johnston*—that standing and subject matter jurisdiction are intertwined for causes of action created by statute. But we note that this position effectively eliminates a district court's constitutional general subject matter jurisdiction when the district

10

NMSC-013, ¶ 11 (text only) (citation omitted). The primary aim of the *Johnston* Court was to "clarify" prior statements, *see id.*, regarding the "traditional rules of jurisdiction and standing in the context of modern mortgage foreclosure actions," *id.* ¶ 1. Because foreclosure actions were developed at common law and were not statutory, the Court determined that standing in those cases is prudential and not jurisdictional and was to be evaluated according to the three traditional elements: "injury in fact, causation, and redressability." *Id.* ¶¶ 11-13, 16 (internal quotation marks and citation omitted). If the standing elements "are not met, as a logical matter, a plaintiff generally cannot show that [they have] stated a cause of action entitling [them] to a remedy." *Id.* ¶ 16. To plead a cause of action in common law foreclosure cases, the party bringing suit must establish standing at the time of filing by "produc[ing] proof that it was entitled to enforce the underlying promissory note prior to the commencement of the foreclosure action." *Id.* ¶¶ 20, 23. This proof demonstrates the concrete injury necessary to establish standing—that the plaintiff has a foreclosure cause of action. *Id.* ¶¶ 23, 30. Apart from a brief reference to the general rule, the Court in *Johnston* did not address the requirements for statutory standing.

---

court's special statutory subject matter jurisdiction is imperiled. *See* N.M. Const. art. VI, § 13. We share the concerns set forth in the concurring opinion.

{14} A few years, later, however, *Gandydancer, LLC v. Rock House CGM, LLC*, specifically raised the issue of statutory standing and its relation to the cause of action created by statute. 2019-NMSC-021, ¶¶ 1, 7-8, 453 P.3d 434. The case involved the New Mexico Unfair Practices Act (UPA), NMSA 1978, §§ 57-12-1 to -26 (1967, as amended through 2019). *Gandydancer, LLC*, 2019-NMSC-021, ¶ 1. The parties disputed whether the UPA contemplated "competitor standing," but the Court observed that "a more precise framing" of the statutory standing question was whether the UPA created a cause of action "to recover lost profits damages from a competitor." *Id.* ¶ 8. The *Gandydancer, LLC* Court, relying on *Key*—an earlier statutory standing case—explained that "'[a] cause of action is defined as an aggregate of operative facts which give rise to a right enforceable in the courts'" and whether the Court "discusses it as a cause of action or standing, 'both doctrines allow plaintiffs to enforce a right in the courts.'" *Id.* (quoting *Key*, 1996-NMSC-038, ¶ 11). The *Key* Court had described statutory standing to require a showing of injury in fact, causation, redressability, and an interest "arguably within the zone of interests to be protected or regulated by the statute." 1996-NMSC-038, ¶ 11 (internal quotation marks and citation omitted). The *Gandydancer, LLC* Court similarly evaluated statutory standing by requiring the plaintiff to demonstrate that a competitive injury was within "the zone of interests to be protected or regulated by the [UPA]." 2019-NMSC-021, ¶ 8 (internal quotation marks and citation omitted).

12

{15} In *Gandydancer, LLC* and *Key*, the plaintiff and the complainant were the individuals bringing a statutory cause of action. *Gandydancer, LLC*, 2019-NMSC-021, ¶ 2; *Key*, 1996-NMSC-038, ¶ 1. In those cases, it was clear that the *plaintiff* must have standing under the statute. Under the WDA, however, the plaintiff is merely a representative who brings the cause of action on behalf of the injured deceased person who does not have capacity to bring a cause of action. *See* § 41-2-3; *Est. of Lajeuenesse*, 2013-NMCA-004, ¶ 14; *cf. Martinez v. Segovia*, 2003-NMCA-023, ¶ 17, 133 N.M. 240, 62 P.3d 331 (addressing a deceased person's lack of capacity to sue for personal injury). For this reason, we must separately consider the WDA in the context of statutory standing in order to determine whether the district court properly dismissed the WDA claim for lack of jurisdiction.

**II.    Plaintiffs Established Statutory Standing Under the WDA and *Chavez* Applies to Allow the District Court to Permit Appointment of the PR**

{16} Plaintiffs argue that because the WDA does not grant a specific person a cause of action, the WDA is not the type of statute under which standing is jurisdictional. Defendants take the position that because the WDA directs that the cause of action "shall be brought by" the PR, no further standing analysis is required. We disagree with both positions. As we explain, the WDA is a purely statutory cause of action for which standing is "a jurisdictional prerequisite." *See Gandydancer, LLC*, 2019-NMSC-021, ¶ 7 (internal quotation marks and citation omitted). We therefore proceed to evaluate standing under the WDA according to our Supreme Court's

13

analysis as set forth in *Gandydancer, LLC* and in that inquiry, we conclude that the injured deceased person, and not the PR, has standing to establish an action under the WDA.

**A.  The WDA Creates a Statutory Cause of Action for Which Standing is a Jurisdictional Prerequisite**

{17}  Plaintiffs acknowledge that a wrongful death cause of action originates entirely by statute but maintain that standing is nevertheless not jurisdictional because the WDA is not the type of statute in which "'the Legislature has granted specific persons a cause of action.'" *See id.* (quoting *San Juan Agric. Water Users Ass'n v. KNME-TV*, 2011-NMSC-011, ¶ 8, 150 N.M. 64, 257 P.3d 884). We agree with the parties that the WDA is a statutory cause of action for which no remedy was available at common law. *See Est. of Krahmer*, 2014-NMCA-001, ¶ 6. We disagree with Plaintiffs, however, that the WDA does not grant specific persons a cause of action. To the contrary, the WDA identifies two specific persons—the injured deceased person in Section 41-2-1 and the PR in Section 41-2-3. To the extent that our determination about whether standing is prudential or jurisdictional relies on the identity of specific persons, the WDA meets that bar. *See Gandydancer, LLC*, 2019-NMSC-021, ¶¶ 6-11 (viewing the UPA as a statutory cause of action that triggered a jurisdictional standing analysis). We therefore conclude that because the WDA creates a cause of action not available at common law and grants that cause of action

14

to specific persons, standing must be established as a jurisdictional prerequisite. *See id.* ¶ 7. We turn now to evaluate *who* has standing under the WDA.

**B.      The Injured Deceased Person Has Standing for a Cause of Action Under the WDA**

{18}      To conduct the statutory standing analysis, we return to Section 41-2-1, which as we have explained, permits an injured person "to maintain an action" against one who, through wrongful act, neglect, or default, caused the death of the injured person. This provision satisfies the three traditional requirements used to establish standing in common law causes of action: "injury in fact, causation, and redressability." *See Johnston*, 2016-NMSC-013, ¶¶ 11-13 (internal quotation marks and citation omitted); *Key*, 1996-NMSC-038, ¶ 11. Apparent from Section 41-2-1 is that the deceased person suffers the actual injury that creates the cause of action. Section 41-2-1 further establishes the zone of interest protected by the WDA. *See Gandydancer, LLC*, 2019-NMSC-021, ¶ 17 ("[T]he identification of the interests protected by the statute allows a court to determine whether a plaintiff has demonstrated that the asserted interests fall within the zone of interest protected."). Section 41-2-1 protects against injuries resulting in death "caused by the wrongful act, neglect, or default of another." Thus, the WDA protects the injured deceased person's interests. Defendants do not dispute this construction but instead argue that Section 41-2-3, which provides for the appointment of a PR to bring the action, establishes standing. It cannot.

15

**{19}** Though "the statute governs who has standing to sue," we view the WDA broadly and in its context. *See Gandydancer, LLC*, 2019-NMSC-021, ¶ 7 (internal quotation marks and citation omitted). The WDA grants the PR no cause of action, the PR has no injury in fact, and no interest of the PR's is protected by the WDA. *Id.* ¶¶ 17-18. Section 41-2-3 addresses not standing but capacity to sue. Even though a deceased person holds the right to sue, because they are deceased, the person has no capacity to sue. *Cf. Martinez*, 2003-NMCA-023, ¶ 17. Section 41-2-3 fills this gap between the right to sue and the ability to sue in the corporeal world. *See Est. of Krahmer*, 2014-NMCA-001, ¶ 7 ("Since the early days of statehood, New Mexico courts have characterized the [WDA] as a statute that transmits the decedent's rights to file a claim to the representative of the wrongful death estate.").

**{20}** Defendants rely on *Johnston* to establish that standing in the present case is a jurisdictional matter. Close analysis of this case as well as *Gandydancer, LLC* demonstrates that to establish standing—whether prudential or jurisdictional—the plaintiff must at least demonstrate a right to be enforced or a cause of action. The foreclosure plaintiff in *Johnston*, in order to have standing and a cause of action, "must produce proof that it [is] entitled to enforce the underlying promissory note prior to the commencement of the foreclosure action," to ensure that a party "will not proceed with a foreclosure action before confirming that it has a right to do so." 2016-NMSC-013, ¶¶ 22-23. Because the foreclosure plaintiff could not produce

proof that it had the right to foreclose at the time the foreclosure complaint was filed, and thereby a direct injury, the plaintiff had no standing. *Id.* ¶ 14. In *Gandydancer, LLC*, for competitors to have standing, the UPA had to encompass a zone of interest that included protections between competitors, which the Court held the statute did not. 2019-NMSC-021, ¶¶ 9, 10. Instead, the zone of interest was limited to "protecting innocent consumers." *Id.* ¶ 28. In wrongful death actions, the party with the right to sue and the cause of action has died. Indeed, an injury resulting in death is necessary to create the cause of action. The WDA, in part, is intended to protect the interests of the dead person who has been injured through the wrongful act, neglect, or default of another. That zone of interest is much like the right of the person holding the note to enforce the mortgage in *Johnston* or the rights of innocent consumers under the UPA. The note at the time a foreclosure complaint is filed, an interest protected by the statute, and a person who has died because of the acts or neglect of another—these are each pivotal to establish a cause of action and standing.

{21}    As the *Chavez* Court explained, the appointment of a PR is "incidental," as opposed to pivotal. 1985-NMSC-114, ¶ 8. The PR brings the action on behalf of the deceased injured person and acts for the benefit of the statutory beneficiaries. *See Est. of Lajeuenesse*, 2013-NMCA-004, ¶ 12. The PR is appointed to act as a nominal party and has been "selected by the Legislature to act as the statutory trustee for the individual statutory beneficiaries." *Chavez*, 1985-NMSC-114, ¶ 8. The WDA does

17

not require a PR to demonstrate an actual injury to themselves in order to establish a cause of action—the PR is a necessary but nominal party to act on behalf of others. We therefore conclude that the appointment or request for appointment of a PR is not a jurisdictional prerequisite to establish statutory standing or a cause of action under the WDA.

**C.     Rule 1-015 and Rule 1-017 Permit the Appointment of a PR After the Original Complaint is Filed**

{22}     Defendants argue that to satisfy Rule 1-017(B), the request to appoint a PR must be filed "with"—or at the time of filing—the original complaint. Plaintiffs contend that the appointment of a PR can occur after the complaint is filed and further argue that Rule 1-017(B) provides nonexclusive options for the timing of requesting appointment of a PR. We decline, however, under these circumstances to definitively construe Rule 1-017(B)'s requirements. The district court denied Plaintiffs' motion to appoint a PR based on the view that appointment was jurisdictional under *Johnston* and Rule 1-017(B) and declared the motion to amend to be moot based on its determination that the absence of a PR was a jurisdictional defect. For the reasons explained in this opinion, the statutory standing principles noted in *Johnston* do not undermine the determination in *Chavez* that the appointment of a PR is not jurisdictional and Rule 1-015 and Rule 1-017 may operate to correct and relate back any appointment errors.

18

**CONCLUSION**

{23}	For the reasons stated herein, we reverse the dismissal of Plaintiffs' wrongful death claim and remand for further proceedings consistent with this opinion.

{24}	**IT IS SO ORDERED.**


_____
**KATHERINE A. WRAY, Judge**

**WE CONCUR:**


_____
**SHAMMARA H. HENDERSON, Judge**


_____
**MICHAEL D. BUSTAMANTE, Judge,**
**retired, Sitting by designation, specially concurring**

**BUSTAMANTE, Judge, retired, sitting by designation (specially concurring).**

{25}   I concur in Judge Wray's opinion because it admirably—and correctly—resolves the issue as framed by the district court's order and the parties' briefing. I write separately to argue that the contours of standing analysis simply should not be intertwined with the concept of subject matter jurisdiction. Recent New Mexico cases addressing "statutory standing" have erroneously done just that. The result has been to skew both analyses and to unduly limit the ability of our general jurisdiction courts to resolve normal and expected issues arising in the cases before them. This case is a prime example.

{26}   I base my objection to recent case law on two grounds. First, that case law started with a piece of dicta plunked into footnote 1 of *ACLU of N.M.*, 2008-NMSC-045. The case cited in the footnote—*In re Adoption of W.C.K.*, 2000 PA Super 68—has been rejected by Pennsylvania courts. *See In re Nomination Petition of deYoung*, 903 A.2d 1164, 1168 n.5 (Pa. 2006). I see no reason to give it vitality in New Mexico. Second, the recent cases ignore Justice Montgomery's erudite discussion of subject matter jurisdiction in *Sundance Mechanical & Utility Corp. v. Atlas* (*Sundance*), 1990-NMSC-031, 109 N.M. 683, 789 P.2d 1250. In my view, *Sundance* provides the proper analytical path to follow in this area. I begin with the history of the recent case law, starting with *ACLU*.

{27} *ACLU* involved a challenge to the City of Albuquerque's (the City) vehicle forfeiture ordinance. 2008-NMSC-045, ¶¶ 2, 3. The plaintiff filed a preenforcement constitutional due process challenge to the ordinance. *Id.* ¶ 1. The City challenged the plaintiff's standing to bring the action and sought dismissal on that basis. The district court denied the motion and entered a permanent injunction prohibiting enforcement of the ordinance. *Id.* ¶ 5. The discussion in the opinion revolved around the plaintiff's request that our Supreme Court replace the federally derived three-factor test with a four-part "prudential factors" test. *Id.* ¶¶ 7, 8. Our Supreme Court agreed with the plaintiff that "standing in our courts is not derived from the state constitution, and is not jurisdictional." *Id.* ¶ 9.

{28} The opinion in *In re Adoption of W.C.K.* does indeed hold that standing was jurisdictional there because the petitioners were not among the class of people allowed to seek visitation rights or *in loco parentis* status as to the child. 2000 PA Super 68, ¶¶ 6, 9. The Court further held that standing could not be waived because standing implicated the trial court's subject matter jurisdiction to hear the case. *Id.* ¶ 5. The rationale of the Superior Court in *In re Adoption of W.C.K.* was rejected by the Pennsylvania Supreme Court in *In re Nomination Petition of deYoung*, 903 A.2d at 1168. There, the Pennsylvania Supreme Court reversed a ruling by a trial court raising the question of statutory standing sua sponte. *Id.* Quoting one of its prior cases, the Supreme Court held that standing to maintain an action is not a

21

jurisdictional matter. *Id.*; *see In re Adoption of Z.S.H.G.*, 2011 PA Super 278, 34 A.3d 1283, 1288 (recognizing that the Pennsylvania Supreme Court has overruled the *In re Adoption of W.C.K.* rationale sub silentio).

{29} The Pennsylvania Supreme Court reaffirmed its view of subject matter jurisdiction in *Bisher v. Lehigh Valley Health Network, Inc.*, 265 A.3d 383 (Pa. 2021). *Bisher* involved a wrongful death action resulting from medical negligence. *Id.* at 388. The plaintiffs—the parents of the deceased—filed pro se wrongful death actions on their own behalf; and the deceased's mother filed a survival action on behalf of the estate. *Id.* at 388-89. In Pennsylvania, a survival wrongful death action must be filed by an attorney. *Id.* at 389-90. Pro se filings by nonattorneys are apparently treated as the unauthorized practice of law. *Id.* The lack of the mother's ability to bring the suit on behalf of the estate was not raised in the trial court. *Id.* at 390. The trial court dismissed the action on other grounds and the plaintiffs appealed. *Id.* at 393-94. The Superior Court, sua sponte, took notice of the previously undiscussed unauthorized practice of law issue. *Id.* at 394. After requiring the mother to retain counsel, the Superior Court dismissed the appeal on the grounds that it lacked subject matter jurisdiction of the case because the complaint filed by the mother was null and void and thus the trial court also lacked subject matter jurisdiction. *Id.* 394-95. The Pennsylvania Supreme Court reversed. *Id.* at 420-21. Noting its view that the concept of "subject matter jurisdiction" should be limited to

22

the class of cases falling within a court's adjudicatory authority, the Supreme Court held that—like standing—a curable problem did not implicate jurisdictional limits. *Id.* at 399-400, 405-07.

{30}     The issue in New Mexico came into full bloom when the Supreme Court cited *ACLU* and *In re Adoption of W.C.K.* without discussion or analysis in *Bank of New York v. Romero*, 2014-NMSC-007, ¶ 17, 320 P.3d 1, supporting its holding that a bank's failure to demonstrate at the commencement of the suit that it had standing to enforce the note meant that a bank could not proceed with the foreclosure action at all. Two months later this Court issued an opinion interpreting *Romero* to mean that in mortgage foreclosure cases "standing is a jurisdictional prerequisite for a cause of action and must be established at the time the complaint is filed." *Deutsche Bank Nat'l. Tr. Co. v. Beneficial N.M., Inc.*, 2014-NMCA-090, ¶ 8, 335 P.3d 217.[3] Our Supreme Court revisited its holding in *Romero* two years later in *Johnston*, 2016-NMSC-013, ¶ 11, and modified its analysis holding "that mortgage foreclosure actions are not created by statute. Therefore, the issue of standing in those cases cannot be jurisdictional." *Johnston* then went on to consider the issue applying prudential considerations and came to the same basic result. *Id.* ¶¶ 20-27. The

---

[3]I acknowledge that I concurred in this opinion. I apparently did not appreciate then the doctrinal implications of *Romero*.

23

opinion did not examine the basic validity of the idea that statutory standing can be jurisdictional, hence the arguments made by the defendants in this case.

{31} Unfortunately none of the cases have considered the import of *Sundance* to the issue. *Sundance* arose from a troubled home construction project. 1990-NMSC-031, ¶¶ 2, 3. A subcontractor filed suit against the homeowner, the general contractor, and against other subcontractors on the job to foreclose on his mechanic's lien. *Id.* ¶ 4. A defendant subcontractor answered and filed a cross-claim against the homeowner seeking damages and to foreclose on its mechanic's lien. *Id.* The homeowner did not file an answer to the cross-claim and a default judgment was eventually entered against him. *Id.* ¶ 5. The homeowner succeeded in getting the default judgment set aside, but again failed to answer. *Id.* ¶¶ 5, 6. The subcontractor filed a motion to reinstate the default. *Id.* ¶ 6. The homeowner finally answered and asked the district court to strike the motion to reinstate the default. *Id.* The district court refused and reinstated the default. *Id.* On appeal the homeowner argued that the district court did not have jurisdiction to reinstate the default because (1) the lien had been discharged by operation of the statute when it was determined that the general contractor had been paid in full; and (2) the district court lacked jurisdiction over the case because the subcontractor had not alleged that he held a contractor's license—as required by statute—and thus the subcontractor had failed to state a claim upon which relief could be granted. *Id.* ¶ 7.

24

{32} Our Supreme Court disposed of the first argument easily. Characterizing the argument to be "that where a statute . . . governs the validity or invalidity of a claim, the court's 'power or authority' to determine the claim depends on there being a valid claim in the first instance." *Id.* ¶ 14. The Supreme Court rejected the argument with the commonsense observation that "it would make jurisdiction turn on . . . the very question to be determined by the court in the exercise of its jurisdiction." *Id.* ¶ 15.

{33} The Court was more intrigued by the second contention. The subcontractor's cross-claim ran afoul of NMSA 1978, Section 60-13-30(A) (1977) that provided

> [n]o contractor shall act as agent or bring or maintain any action in any court of the state for the collection of compensation for the performance of any act for which a license is required by the Construction Industries Licensing Act without alleging and proving that such contractor was a duly licensed contractor at the time the alleged cause of action arose.

*Sundance*, 1990-NMSC-031, ¶ 17. The Supreme Court noted New Mexico case law and foreign case law holding that failure to state a claim did not defeat jurisdiction, and other cases that held the opposite. *Id.* ¶¶ 18-24. The Court ruled that it would follow those cases that held that jurisdiction to hear and decide cases within the general competence of the district court did not affect the "jurisdiction" of the court to deal with cases on their merits. *Id.* ¶¶ 22-26.

{34} The specific issue in *Sundance* was argued under the rubric of failure to state a claim. But the assertion could just as easily have been made that the subcontractor

25

did not have standing to pursue a collection because of his failure to allege that he was properly licensed at the time he did work. The policy concerns and arguments would be similar, if not identical. The result should thus be the same. If the problem with pleadings or the technical requirements for pursuing a claim are curable, the district court has the "jurisdiction or authority" to consider requests aimed at solving the initial problem. The appointment of a personal representative is just such a potentially curable issue.

_____
**MICHAEL D. BUSTAMANTE, Judge, retired, Sitting by designation**