The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number:

Filing Date: June 2, 2025

**NO. S-1-SC-40427**

**BRAD BOLEN a/k/a BRADLEY CARROL BOLEN,**

Plaintiff-Petitioner,

v.

**NEW MEXICO RACING COMMISSION; and FABIAN LOPEZ, Records Custodian for New Mexico Racing Commission,**

Defendants-Respondents.

**ORIGINAL PROCEEDING ON CERTIORARI**
**Joshua A. Allison, District Judge**

L. Helen Bennett, P.C.
Linda Helen Bennett
Albuquerque, NM

for Petitioner

Jackson Loman Downey & Stevens-Block, P.C.
R. Eric Loman
Kara Y. Shair-Rosenfield
Albuquerque, NM

for Respondents

Kristen Greer Love
María Martínez Sánchez
Albuquerque, NM

for Amicus Curiae American Civil Liberties Foundation of New Mexico

Walker Boyd
Jeremy Farris
Albuquerque, NM

for Amicus Curiae New Mexico State Ethics Commission

Erin Lecocq, Agency Attorney
Santa Fe, NM

for Amicus Curiae New Mexico Public Regulation Commission

Brian VanDenzen
David Buchanan
Santa Fe, NM

for Amicus Curiae New Mexico Administrative Hearings Office

**OPINION**

**ZAMORA, Justice.**

## I. INTRODUCTION

{1} The New Mexico Civil Rights Act (CRA), NMSA 1978, §§ 41-4A-1 to -13 (2021), authorizes a person to sue a public body for deprivations of the rights, privileges, and immunities guaranteed by the Bill of Rights in Article II, Sections 17 and 18 of the New Mexico Constitution. Bradley Bolen (Bolen) asserted a claim under the CRA against the New Mexico Racing Commission (NMRC), alleging that NMRC violated his state constitutional rights by pursuing a vindictive prosecution against him. NMRC moved for summary judgment, arguing that it was entitled to judicial immunity in pursuing an administrative disciplinary proceeding against Bolen. The district court denied NMRC's motion, concluding that the defense of judicial immunity is unavailable to a public body sued under the CRA. The Court of Appeals reversed, holding both that the defense is available to a public body and that NMRC is entitled to immunity under the facts presented. *Bolen v. N.M. Racing Comm'n*, 2024-NMCA-056, ¶¶ 12, 20, 553 P.3d 492.

{2} We granted certiorari to consider the following question: Is judicial immunity a defense available to a public body sued under the CRA? We answer: Yes, a public body may raise judicial immunity as an affirmative defense to claims brought

pursuant to the CRA. We explain that judicial immunity, which applies to judges, advocates, and witnesses, may be consistently applied under the CRA to preserve the role of the judiciary in protecting a person's constitutional rights. We also articulate a framework for determining when that defense applies to quasi-judicial adjudicatory proceedings in the executive branch. However, as the record and arguments presented here are insufficient to resolve the question of NMRC's entitlement to immunity, we reverse the Court of Appeals to the extent it held that NMRC is immune from Bolen's CRA claim. We remand to the district court for further proceedings consistent with this opinion.

## II.    BACKGROUND

{3}    NMRC is a state administrative agency that regulates New Mexico's horse racing industry. *See* NMSA 1978, §§ 60-1A-1 to -30 (2007, as amended through 2023). Bolen is a horse trainer licensed by NMRC.

{4}    In July 2021, Bolen got into an argument with an NMRC racing steward.[1] The disagreement arose when the steward refused to reinstate the license of an assistant trainer whom Bolen wished to employ. The assistant trainer left the room and

---

[1]A racing "'steward'" is "an employee of [NMRC] who supervises horse races and oversees a race meet while in progress, including holding hearings regarding licensees and enforcing the rule of [NMRC] and the horse racetrack." Section 60-1A-2 (GG).

returned with Bolen on speakerphone, who then argued with the steward about reinstating the trainer. The parties do not dispute that Bolen criticized the steward during the phone call.

{5}     NMRC initiated an administrative disciplinary action against Bolen, asserting that Bolen transgressed regulations prohibiting "conduct or reputation [which] may adversely reflect on the honesty and integrity of horse racing or interfere with the orderly conduct of a race meeting." 16.47.1.8(L)(1)(i) NMAC. A panel of three stewards presided over an evidentiary hearing on the asserted infraction, found that Bolen violated 16.47.1.8(L)(1)(i) NMAC, and issued a $500 citation that would be waived and abated so long as Bolen had no additional violations within one year.

{6}     Bolen appealed the ruling under regulations that entitle him to a de novo hearing before an independent administrative hearing officer. 15.2.1.9(A)(6)(b), (B)(7)(a) NMAC. Bolen also sued NMRC in the district court, asserting a claim under the CRA for a violation of his rights to free speech and due process under Article II, Sections 17 and 18 of the New Mexico Constitution. Bolen alleged that NMRC pursued the disciplinary proceeding in retaliation for his protected speech with the steward and for a previous, unrelated lawsuit he had filed against NMRC's Executive Director. Bolen ultimately withdrew his administrative appeal, choosing only to pursue litigation in the district court.

{7} Bolen and NMRC subsequently filed cross-motions for summary judgment. In relevant part, Bolen argued that NMRC violated his constitutional free speech and petition rights by "initiat[ing] . . . a vindictive prosecution in retaliation for his exercise of those rights." In its motion, NMRC argued that its "quasi-judicial administrative actions" in pursuing the disciplinary proceeding against Bolen entitle it to absolute immunity from Bolen's CRA claim.

{8} The district court refused to extend quasi-judicial immunity to NMRC. Relying on jurisprudence construing the federal civil rights act, 42 U.S.C. § 1983 (hereinafter § 1983), the district court reasoned that judicial immunity is based on public policies which "protect[] an *individual defendant* from *personal liability* from damages." The district court decided that these policies were not implicated under the CRA because the enactment only authorizes a plaintiff to sue a public body, which is defined as a governmental entity. *See* § 41-4A-3(C) (providing that "[c]laims brought pursuant to the [CRA] shall be brought exclusively against a public body"); § 41-4A-2 (defining "public body" to include a list of specified governmental entities). The district court, therefore, concluded that the defense of judicial immunity is unavailable to NMRC.

{9} NMRC sought and the Court of Appeals granted an interlocutory appeal. The Court of Appeals held that the district court erred. *Bolen*, 2024-NMCA-056, ¶ 1.

4

First, the Court of Appeals concluded that the plain language of Section 41-4A-10, which preserves certain immunity defenses, confirms that judicial immunity is available to a public body in defense of a CRA claim. *Bolen*, 2024- NMCA-056, ¶ 12. Second, the Court of Appeals recognized that officials serving in prosecutorial capacities may be entitled to quasi-judicial immunity. *Id.* ¶ 18. Third, the Court of Appeals applied a three-part formula articulated in *Horwitz v. State Bd. of Med. Exam'rs*, 822 F.2d 1508, 1513 (10th Cir. 1987), to hold that NMRC is entitled to quasi-judicial immunity under the facts of the case. *Bolen*, 2024-NMCA-056, ¶¶ 17, 28. The Court of Appeals, therefore, reversed the district court and "remand[ed] with instructions to enter summary judgment in favor of NMRC on Bolen's [CRA] claims." *Id.* ¶ 28.

{10} Bolen petitioned this Court to grant a writ of certiorari. We granted certiorari and now affirm the Court of Appeals, in part, and reverse, in part.

**III.   DISCUSSION**

{11} The CRA was enacted by our Legislature in 2021 as a state analogue to federal civil rights litigation under § 1983. *See* 2021 N.M. Laws, ch. 119, §§ 1 to 14; *see also* N.M. Civ. Rts. Comm'n, *New Mexico Civil Rights Commission Report*, at 1 (2020) (recommending that the Legislature enact "a state analogue to [§] 1983" and proposing draft legislation that was later enacted, with substantial revision, as the

CRA). Because this is our first time construing this landmark legislation, and because its context informs our analysis, we begin with a brief summary of the CRA and the context in which it was promulgated.

{12} Prior to the enactment of the CRA, a person seeking damages for deprivation of constitutional rights by an entity or official of the State of New Mexico had few means of redress. Such a person could sue a state official under § 1983, but only for rights secured under the United States Constitution. *See* § 1983 (creating a cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States). Such a person could also assert a claim under the New Mexico Tort Claims Act (TCA), NMSA 1978, §§ 41-4-1 to -27, -30 (1976, as amended through 2020). Sections 41-4-5 through -12 of the TCA, discuss liabilities permitting a person to maintain an action for injuries resulting from the "deprivation of any rights, privileges or immunities secured by the constitution and laws of the United States or New Mexico," but only, for example, "when caused by law enforcement officers while acting within the scope of their duties," § 41-4-12 (defining the TCA liability of law enforcement officers). Outside of this limited

immunity waiver, New Mexico retained sovereign immunity[2] from claimed deprivations of constitutional rights, § 41-4-4(A), and previously enacted "no statute analogous to § 1983 that would provide for damages against government entities or their officials for past violations of state statutes or the state Constitution." *Carter v. City of Las Cruces*, 1996-NMCA-047, ¶ 13, 121 N.M. 580, 915 P.2d 336.

{13} The Legislature enacted the CRA to address this gap by creating a private cause of action for a person deprived of state constitutional rights by the acts or omissions of New Mexico governmental entities and officials. *See* § 41-4A-1; § 41-4A-3. The CRA provides, in relevant part,

> A person who claims to have suffered a deprivation of any rights, privileges or immunities pursuant to the bill of rights of the constitution of New Mexico due to acts or omissions of a public body or person acting on behalf of, under color of or within the course and scope of the authority of a public body may maintain an action to establish liability and recover actual damages and equitable or injunctive relief in any New Mexico district court.

Section 41-4A-3(B). The CRA defines a public body to include "a state or local government, an advisory board, a commission, an agency or an entity created by the constitution of New Mexico or any branch of government that receives public

---

[2] *State ex rel. Evans v. Field*, 1921-NMSC-082, ¶ 6, 27 N.M. 384, 201 P. 1059 ("It is a fundamental doctrine at common law and everywhere in America that no sovereign state can be sued in its own courts or in any other without its consent and permission.").

7

funding." Section 41-4A-2. Claims asserted under the CRA "shall be brought exclusively against a public body," and the public body may be held vicariously liable for the "conduct of individuals acting on behalf of, under color of or within the course and scope of the authority of the public body." Section 41-4A-3(C).

{14}     Among its notable features, the CRA prohibits the use of qualified immunity as a defense to a claim brought pursuant to that act. Section 41-4A-4. Qualified immunity is a defense available to state officials sued in a personal capacity under § 1983 and provides immunity from damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The CRA also waives sovereign immunity for claims brought pursuant to that act and prohibits raising sovereign immunity as a defense to a CRA claim. Section 41-4A-9. However, the CRA explicitly preserves other immunity defenses, providing,

> The prohibition on the use of the defense of qualified immunity pursuant to [CRA Section 41-4A-4] and the waiver of sovereign immunity pursuant to [CRA Section 41-4A-9] shall not abrogate judicial immunity, legislative immunity or any other constitutional, statutory or common law immunity.

Section 41-4A-10. The dispute in the current proceeding primarily centers on the meaning of Section 41-4A-10.

{**15**}    The parties here agree that Section 41-4A-10 expressly preserves judicial immunity. But the parties disagree about whether judicial immunity extends to governmental entities. Bolen argues that judicial immunity is a doctrine that "protects people and not entities" and, therefore, that a public body may not rely on judicial immunity in defense of a CRA claim. NMRC responds that the CRA's plain language establishes that judicial immunity is an available defense. Our resolution of this dispute hinges on the Legislature's intent with respect to the defenses available to a public body sued under the CRA. We review questions of statutory interpretation de novo. *State v. Off. of Pub. Def. ex rel. Muqqddin*, 2012-NMSC-029, ¶ 13, 285 P.3d 622.

**A.    Judicial Immunity Is Available to Public Bodies Sued Under the CRA**

{**16**}    We consider whether a public body may raise judicial immunity as an affirmative defense to a CRA claim. We ground our analysis in well-settled principles of statutory construction. Our primary task in construing a statute is to ascertain and give effect to legislative intent. *Baker v. Hedstrom*, 2013-NMSC-043, ¶ 11, 309 P.3d 1047. When construing legislative intent, we use the statute's plain language as our primary guide. *State v. Rivera*, 2004-NMSC-001, ¶ 10, 134 N.M. 768, 82 P.3d 939. "We will not depart from the plain wording of a statute, unless it is necessary to resolve an ambiguity, correct a mistake or an absurdity that the

9

Legislature could not have intended, or to deal with an irreconcilable conflict among statutory provisions." *Regents of Univ. of N.M. v. N.M. Fed'n of Tchrs.*, 1998-NMSC-020, ¶ 28, 125 N.M. 401, 962 P.2d 1236.

{17}     However, "we have not relied upon the literal meaning of a statute when such an application would be absurd, unreasonable, or otherwise inappropriate." *Rivera*, 2004-NMSC-001, ¶ 13. And if there is "genuine uncertainty as to what the legislature was trying to accomplish," then it is our "responsibility to search for and effectuate the legislative intent—the purpose or object—underlying the statute." *State ex rel. Helman v. Gallegos*, 1994-NMSC-023, ¶ 23, 117 N.M. 346, 871 P.2d 1352. To resolve uncertainty in the meaning of a statute, we may examine "the context in which [the statute] was promulgated, including the history of the statute and the object and purpose the Legislature sought to accomplish." *State v. Nick R.*, 2009-NMSC-050, ¶ 11, 147 N.M. 182, 218 P.3d 868 (internal quotation marks and citation omitted). We may also look to other enactments in pari materia. *United Rentals Nw., Inc. v. Yearout Mech., Inc.*, 2010-NMSC-030, ¶ 22, 148 N.M. 426, 237 P.3d 728.

**1.     The plain language of the CRA preserves judicial immunity**

{18}     We begin with the language of Section 41-4A-10. Bolen suggests that the statutory language is ambiguous as it does not clearly provide a public body with the

defense of judicial immunity. NMRC responds that Section 41-4A-10, if read in harmony with the other provisions of the CRA, permits a public body to assert judicial immunity in defense of a CRA claim. NMRC argues that failing to recognize that public bodies may assert judicial immunity would render Section 41-4A-10 superfluous.

{19} We agree with Bolen that the language of Section 41-4A-10, standing alone, is ambiguous with respect to the question presented. Section 41-4A-10 expressly states that the CRA's prohibition of qualified immunity and waiver of sovereign immunity "shall not abrogate" judicial immunity, but the statute is silent about whether judicial immunity is otherwise available to a public body in defense of a CRA claim. *See Abrogate*, *Black's Law Dictionary* (12th ed. 2024) (defining abrogate as "[t]o abolish (a law or custom) by formal or authoritative action, to annul or repeal"). Thus, the wording of the statute does not conclusively resolve the issue.

{20} But we also agree with NMRC that Section 41-4A-10 would be meaningless if judicial immunity is unavailable to a public body in defense of a CRA claim. In interpreting the language of a statute, we must give meaning to each word and "'avoid rendering the Legislature's language superfluous.'" *State v. Farish*, 2021-NMSC-030, ¶ 11, 499 P.3d 622 (quoting *Baker*, 2013-NMSC-043, ¶ 24). Further, we must also consider the entirety of an enactment and "constru[e] each part in

11

connection with every other part to produce a harmonious whole." *Pirtle v. Legis. Council Comm. of N.M. Legislature*, 2021-NMSC-026, ¶ 14, 492 P.3d 586 (internal quotation marks and citation omitted). Given that Section 41-4A-3(C) only permits a CRA claim to be brought "against a public body," it is logical that, by expressly preserving judicial immunity in Section 41-4A-10, the Legislature contemplated that a public body would be able to raise judicial immunity as an affirmative defense. The statutory language of the CRA, therefore, strongly suggests that judicial immunity is an available defense for a public body.

**2.       Judicial immunity extends to governmental entities**

{21}     Despite this statutory language, Bolen suggests that permitting a public body to raise judicial immunity is inconsistent with the policy rationale underlying the doctrine. Bolen claims that judicial immunity is based on policies intended to protect individual defendants from personal liability. Bolen suggests that these policies are not implicated under the CRA because claims can only be asserted against a governmental entity.

{22}     We disagree with Bolen's premise. While *qualified* immunity reflects policies concerned with protecting individual state officials from personal liability under § 1983, *see Owen v. City of Independence, Mo.*, 445 U.S. 622, 653 (1980), "personal liability . . . [is] less compelling, if not wholly inapplicable, when the liability of the

12

[governmental] entity is at issue." Judicial immunity, like other *absolute* immunities, is a common law doctrine that primarily protects "the proper functioning of the office." *Van de Kamp v. Goldstein*, 555 U.S. 335, 345 (2009) (internal quotation marks and citation omitted). Courts extend judicial immunity to "those exceptional situations where it is demonstrated that absolute immunity is essential for the conduct of the *public business*." *Butz v. Economou*, 438 U.S. 478, 507 (1978) (emphasis added). Judicial immunity is, therefore, "justified and defined by the *functions* it protects and serves, not by the person to whom it attaches." *Forrester v White*, 484 U.S. 219, 227 (1988), *superseded by statute on other grounds as stated in Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 929 (9th Cir. 2004).

{23}     We have previously extended judicial immunity from actions for damages to "'courts of either limited or general jurisdiction . . . while acting within their jurisdiction.'" *Edwards v. Wiley*, 1962-NMSC-116, ¶ 7, 70 N.M. 400, 374 P.2d 284 (quoting *Shaw v. Moon*, 245 P. 318, 319 (Or. 1926)); *see also Galindo v. W. States Collection Co.*, 1970-NMCA-118, ¶ 13, 82 N.M. 149, 477 P.2d 325 ("Judicial officers are not liable for erroneously exercising their judicial powers. They are, however, liable for acting wholly in excess of their jurisdiction."). The doctrine of judicial immunity was "'originally developed to preserve the autonomy and integrity of the judiciary.'" *Collins ex rel. Collins v. Tabet*, 1991-NMSC-013, ¶ 24, 111 N.M.

13

391, 806 P.2d 40 (citation omitted), *abrogated on other grounds by State v. Mares*, 2024-NMSC-002, ¶ 2, 543 P.3d 1198; *see also Vickrey v. Dunivan*, 1955-NMSC-006, ¶ 7, 59 N.M. 90, 279 P.2d 853 ("No rule is more firmly established than that judicial officers are not liable for the erroneous exercise of judicial powers vested in them."). As the "the settled doctrine of the English courts for many centuries," judicial immunity is applied "for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence, and without fear of consequences." *Bradley v. Fisher*, 13 Wall. 335, 80 U.S. 335, 347, 349 n.16 (1871) (internal quotation marks and citation omitted). This is because judicial "errors may be corrected on appeal," and a judge "should not have to fear that unsatisfied litigants may hound [the judge] with litigation charging malice or corruption." *Pierson v. Ray*, 386 U.S. 547, 554 (1967). Judicial immunity similarly discourages collateral attacks on judicial orders and encourages litigants to rely on established court procedure as the means of correcting judicial error. *Forrester*, 484 U.S. at 225.

{24} The United States Supreme Court has interpreted judicial immunity to include not only judges, but also those who "participate" in the adjudicatory process. *See Butz*, 438 U.S. at 509. These participants include, in addition to judges, "grand jurors, petit jurors, advocates, and witnesses." *Id.* In placing grand jurors and

14

advocates—such as, prosecutors—under the umbrella of judicial immunity, the Supreme Court has recognized these actors exercise a discretionary judgment on the basis of evidence presented to them that is functionally comparable to the judgment passed by a judge. *See Imbler v. Pachtman*, 424 U.S. 409, 423 n. 20 (1976) (citing *Turpen v. Booth*, 56 Cal. 65 (1880)). Consequently, the same considerations underlying the immunity of judges—broadly, upholding the "independence" and "usefulness" of the office, *see Bradley*, 13 Wall. 335, 80 U.S. at 348-49—also form the basis for immunity of grand jurors and prosecutors. *See Imbler*, 424 U.S. at 422-23.

{25}    The policy rationale underlying the doctrine of judicial immunity—preserving the autonomy and integrity of the judiciary—applies equally to individuals and governmental entities. If we were to hold that judicial immunity protects individuals but not entities, then litigants who are dissatisfied with a judge's order could circumvent the purpose and effects of the doctrine simply by suing a judicial entity instead of an individual judge. Thus, outside of the § 1983 context, other courts have extended judicial immunity to governmental entities performing judicial and quasi-judicial functions. *See, e.g.*, Restatement (Second) of Torts § 895B (1965) ("Even when a [s]tate is subject to tort liability, it and its governmental agencies are immune to the liability for acts and omissions constituting . . . the exercise of a judicial or

15

legislative function."); *Marion Superior Ct. Prob. Dep't v. Trapuzzano*, 223 N.E.3d 282, 289-90 (Ind. Ct. App. 2023) (applying quasi-judicial immunity to a probation department), *transfer denied sub nom. Marion Cnty. Superior Ct. Prob. Dep't v. Trapuzzano*, 232 N.E.3d 646 (Table) (Ind. 2024); *Reddy v. Karr*, 9 P.3d 927, 931 (Wash. Ct. App. 2000) ("'[T]he public policy which requires immunity for the [individual officer] also requires immunity for both the state and the county for acts of judicial and quasi-judicial officers in the performance of the duties which rest upon them.'" (second alteration in original) (citation omitted)); *Rahrer v. Bd. of Psych.*, 2000 MT 9, ¶ 13, 993 P.2d 680 ("[T]he objectives sought by granting immunity to individual officers—free, independent, and untrammeled action— would be seriously impaired or destroyed if we did not extend immunity to the state and its agencies."). We, therefore, conclude that the doctrine of judicial immunity extends to claims for damages asserted against a governmental entity, including a public body sued under the CRA.

**3. Unlike § 1983, the CRA does not distinguish between individual and official-capacity immunity defenses**

{26}     The district court here nevertheless decided that jurisprudence interpreting § 1983 clarifies that judicial immunity is unavailable to a public body. Under § 1983, judicial immunity may be asserted by a state official when sued in a personal capacity. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). But in a § 1983 official-

16

capacity suit, which is considered an action against a governmental entity in all but name, the only immunity defenses available "are forms of sovereign immunity that the entity, qua entity, may possess, such as the Eleventh Amendment." *Id.* at 167 (emphasis omitted); *see also Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("[T]he only immunities available to the defendant in an official-capacity action are those that the governmental entity possesses."). The district court here essentially equated a CRA claim to a § 1983 official-capacity suit, concluding that a public body, like an entity sued under § 1983, cannot raise judicial immunity as a defense. Bolen defends the district court's reasoning as correct.

{27} Although we agree with the district court that § 1983 is in pari materia with the CRA, we disagree that the jurisprudence construing § 1983 controls the question presented here. The CRA does not maintain § 1983's distinction between personal-capacity and official-capacity suits, and we decline to import this distinction in the absence of a clearer indication of a legislative intent to do so. *See State v. Trujillo*, 2009-NMSC-012, ¶ 11, 146 N.M. 14, 206 P.3d 125 ("We will not read into a statute any words that are not there, particularly when the statute is complete and makes sense as written."); *cf. also Flores v. Herrera*, 2016-NMSC-033, ¶¶ 11-12, 384 P.3d 1070 (declining to interpret a statute as providing a personal-capacity claim against a state officer in part because the "Legislature knows how to expressly impose

personal liability on a public employee," but "provided no textual indication of any intent to impose personal liability on a state officer").

{28} Rather, § 1983's distinction between personal-capacity and official-capacity suits reflects jurisdictional limitations placed on the federal courts arising from state sovereign immunity and the Eleventh Amendment to the United States Constitution. *Hafer*, 502 U.S. at 27; *Graham*, 473 U.S. at 169; *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974). These jurisdictional limitations do not pertain to claims asserted pursuant to the CRA, as "the Eleventh Amendment does not apply in state courts." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 63-64 (1989).

{29} The plain language of the CRA also confirms that § 1983's distinction between official and personal-capacity suits does not exist under our state's civil rights legislation. Unlike the CRA, a § 1983 claim cannot be asserted against a state government or its entities but may be asserted against an individual state official in either a personal or official capacity. *Will*, 491 U.S. at 66-71; *Graham*, 473 U.S. at 165-66. A personal-capacity suit seeks to impose personal liability on the official. *Scheuer v. Rhodes*, 416 U.S. 232, 239 (1974), *overruled on other grounds as recognized by Davis v. Scherer*, 468 U.S. 183, 188, 191 (1984); *see also* § 41-4-4(B)(2), (C), (D)(2) (addressing indemnification of public employees for constitutional torts occurring within the scope of duty). An official-capacity suit is

considered a suit against the governmental entity itself. *Ford Motor Co. v. Dep't of Treasury of Ind.*, 323 U.S. 459, 464 (1945), *overruled on other grounds by Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 623 (2002); *Ex parte Young*, 209 U.S. 123, 151 (1908), *superseded by statute on other grounds as stated in EEOC v. Peabody W. Coal Co.*, 610 F.3d 1070, 1085 (9th Cir. 2010). A court may award retroactive damages in a § 1983 personal-capacity suit. *Quern v. Jordan*, 440 U.S. 332, 336-37 (1979). In an official-capacity suit, however, a court typically may award only prospective relief such as an injunction. *Graham*, 473 U.S. at 167 n.14; *but see Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 662, 690-91 (1978) (providing that a court may award damages in an official-capacity suit against a municipality, but only if the asserted constitutional violation arose out of an official custom or policy). In contrast, the CRA draws no distinction between the remedies available based on the capacity of the suit, but instead provides that a court may award damages, injunctive, and equitable relief exclusively against a public body due to its conduct or the conduct of individuals acting on its behalf. Section 41-4A-3(B), (C).

{30}     Similarly, an official sued in a personal capacity under § 1983 can raise the defense of qualified or absolute immunity, but an official or municipality sued in an official capacity cannot rely on these defenses. *Graham*, 473 U.S. at 166; *Owen*, 445

19

U.S. at 652-57. The CRA expressly prohibits qualified immunity from being raised as a defense to claims asserted pursuant to that act. Section 41-4A-4. The Legislature's express prohibition of qualified immunity, despite that defense being unavailable to an entity under § 1983, suggests that the Legislature did not intend for CRA claims to mirror § 1983 with respect to the defenses available to litigants. The Legislature is presumed to know the law when enacting a statute, *Gandydancer, LLC v. Rock House CGM, LLC*, 2019-NMSC-021, ¶ 16, 453 P.3d 434, including the law pertaining to the unavailability of qualified immunity as a defense to a § 1983 official-capacity suit. Accordingly, the § 1983 jurisprudence cited by the district court is inapposite to the question presented.

{31}    As discussed in the preceding subsection, the policy rationale underlying judicial immunity applies equally to both individuals and governmental entities. Because Section 41-4A-10 expressly preserves judicial immunity, we hold that a public body may raise judicial immunity in affirmative defense of a claim for damages asserted pursuant to the CRA. The district court erred by concluding otherwise. We, therefore, affirm the Court of Appeals in reversing the district court. *Bolen*, 2024-NMCA-056, ¶ 12.

20

## 4. Judicial immunity must be applied consistently with the CRA's purpose

{32} Bolen also suggests that extending judicial immunity to public bodies would defeat the purpose of the CRA, which is to provide a remedy to persons deprived of their state constitutional rights by New Mexico entities and officials. Bolen suggests that permitting a public body to assert absolute immunity to a CRA claim would effectively immunize unconstitutional conduct so long as the conduct bears any connection to an adjudicatory proceeding. Although we acknowledge the potential for conflict between judicial immunity and the remedy provided by the CRA, we conclude that judicial immunity can be applied consistently with the CRA if it is tailored to promote the doctrine's underlying rationale.

{33} This Court previously explored the scope of judicial immunity in *Collins*, 1991-NMSC-013. In *Collins*, we recognized that judicial immunity extends to judges and "various persons whose adjudicatory functions or other involvement with the judicial process have been thought to warrant protection from harassment, intimidation, or other interference with their ability to engage in impartial decision-making." *Id.* ¶ 18. Thus, we held that a guardian ad litem is immune when functioning as an "'arm of the court'" in assessing whether a tort claim settlement is in the best interests of a child. *Id.* ¶ 16 (citation omitted). However, we declined to extend immunity to "a guardian ad litem who is *not* acting as a 'friend of the court,'"

but instead "is acting as an advocate for his client's position—representing the pecuniary interests of the *child* instead of looking into the fairness of the settlement (for the child) on behalf of the *court*." *Id.* ¶ 27. We explained that "the basic reason for conferring quasi-judicial immunity on the guardian does not exist" when the guardian ad litem is not performing a judicial function. *Id.* We remanded the case to the district court for a "limited factual inquiry" into the nature of the guardian ad litem's conduct with respect to the settlement negotiations at issue in that case. *Id.* ¶¶ 15, 42-45.

{34} Later, in *Kimbrell v. Kimbrell*, 2014-NMSC-027, 331 P.3d 915, we explained that a guardian ad litem, court-appointed to assist the court in making custody determinations, is immune for conduct taken in the performance of that function. *Id.* ¶¶ 2, 8, 17. We reasoned that the interests behind judicial immunity were implicated because (a) the guardian ad litem performs a judicial function when helping a court make custody determinations, (b) "the threat of civil liability [would] impair the guardian ad litem's ability" to perform that function, and (c) "procedural safeguards . . . are available to protect against misconduct" in the performance of that function. *Id.* ¶¶ 12-13. We, therefore, held that the guardian ad litem was entitled to immunity to the extent that her actions did not clearly fall outside of "the scope of [the district court's] appointment." *Id.* ¶¶ 2, 13-14, 17.

{35} Our opinions in *Collins* and *Kimbrell* thus extend immunity to individuals and entities functioning as an *arm of the court* by performing tasks integral to a judicial proceeding. *See, e.g.*, *Hunnicutt v. Sewell*, 2009-NMCA-121, ¶¶ 12-13, 147 N.M. 272, 219 P.3d 529 (applying *Collins* to extend judicial immunity to certain functionaries of a district court); *Lowrey v. Argueta*, 2024-NMCA-034, ¶¶ 9-11, 545 P.3d 1208 (applying *Collins* and *Kimbrell* in determining the immunity of a probation officer and supervisor acting as arms of the metropolitan court). Contrary to Bolen's assertion, we do not view this narrow application of judicial immunity as inconsistent with the purpose of the CRA. The CRA's purpose is to provide persons with a means of securing the rights, privileges, and immunities recognized by our state constitution. When applied consistent with its purpose, judicial immunity "'preserve[s] the autonomy and integrity of the judiciary,'" *Collins*, 1991-NMSC-013, ¶ 24 (citation omitted), thus ensuring that our state courts remain independent and available to vindicate deprivations of a person's state constitutional rights.

{36} As the Court of Appeals here correctly noted, we have not yet considered the scope of judicial immunity in the context of a proceeding like the one presented here, which involves a quasi-judicial adjudication in the executive branch. *Bolen*, 2024-NMCA-056, ¶ 15. *Collins* and *Kimbrell* both involved conduct tied to a judicial proceeding and thus had no occasion to consider whether judicial immunity extends

23

to an administrative agency's adjudicatory proceedings. Therefore, to ensure judicial immunity is extended only so far as warranted by its policy justification, we next explore the scope of judicial immunity in the context of an adjudicatory proceeding in the executive branch.

**5.      Judicial immunity extends to administrative proceedings when both the proceeding and the challenged conduct are judicial in nature**

{37}    Bolen does not dispute that judicial immunity may extend to officials performing quasi-judicial functions in the executive branch. Although we are not bound by this concession, we agree and hold that judicial immunity, in certain circumstances, may extend to individuals and governmental entities performing quasi-judicial functions in the executive branch. *See Collins*, 1991-NMSC-013, ¶ 18 (citing *Butz*, 438 U.S. at 512-14 for the proposition that judicial immunity extends to a "federal hearing examiner or administrative law judge"); *City of Albuquerque v. Chavez*, 1997-NMCA-054, ¶ 17, 123 N.M. 428, 941 P.2d 509 (noting "that the Tenth Circuit recently held that personnel hearing officers who hear grievances . . . are entitled to absolute immunity from damages actions under . . . § 1983"). An administrative agency's adjudicatory proceedings often mimic judicial proceedings to the extent that the agency may "investigate facts, weigh evidence, draw conclusions as a basis for official action, and exercise discretion of a judicial nature." *State ex rel. Battershell v. City of Albuquerque*, 1989-NMCA-045, ¶ 16, 108 N.M.

24

658, 777 P.2d 386 (citing *Duke City Lumber Co. v. N.M. Env't Improvement Bd.*, 1980-NMCA-160, 95 N.M. 401, 622 P.2d 709). However, not all administrative proceedings possess sufficient "identification with the judicial process of the kind and depth [to] occasion[] absolute immunity." *Cleavinger v. Saxner*, 474 U.S. 193, 206 (1985). Thus, in the context of adjudicatory proceedings in the executive branch, we believe an additional layer of analysis is needed to determine whether the proceeding is sufficiently analogous to the judicial process so as to implicate the policies underlying judicial immunity. *Butz*, 438 U.S. at 508, 513 (summarizing support for according federal agency adjudicators immunity from suits for damages); *see also Imbler*, 424 U.S. at 421 (explaining that the extension of absolute immunity to an official requires "a considered inquiry into the immunity historically accorded the relevant official at common law and the interests behind it").

{38}     We, therefore, require courts addressing questions of judicial immunity in the context of an adjudicatory proceeding in the executive branch to consider both (1) whether the adjudicatory proceeding shares enough characteristics of the judicial process to warrant the extension of judicial immunity to the proceeding and (2) whether the conduct at issue consists of a judicial function. We briefly elucidate considerations relevant to these inquiries in the next two subsections. We also emphasize that judicial immunity should extend no further than necessary to achieve

25

the policy goals of protecting independent decision-making and ensuring the integrity of an established adjudicatory process. *See Collins*, 1991-NMSC-013, ¶¶ 17-18, 42 (explaining the policy rationale for judicial immunity and emphasizing that "[a]bsolute immunity will be 'extended no further than its justification would warrant'" (citation omitted)). An individual or entity seeking judicial immunity bears the burden of showing that the immunity should apply. *See id.* ¶ 42 (noting that judicial immunity "is an affirmative defense, and the burden of proving it lies with the person asserting it").

### a. Considerations relevant to the judicial nature of the administrative proceeding

{39} In evaluating whether judicial immunity attaches to an administrative agency's adjudicatory proceedings, we take guidance from the United States Supreme Court's opinion in *Butz*, 438 U.S. at 508-16. In *Butz*, the United States Supreme Court considered whether the petitioners, federal agency officials, were immune from a civil rights claim alleging that the officials initiated and pursued a vindictive prosecution against the respondent. *Id.* at 480-85, 508-16. The federal circuit court in *Butz* had concluded that immunity does not extend to officials performing quasi-judicial functions in the executive branch. *Id.* at 511. The Supreme Court disagreed, reasoning that "[t]he cluster of immunities protecting the various participants in judge-supervised trials stems from the characteristics of the judicial

26

process rather than its location." *Id.* at 512. The United States Supreme Court concluded that "adjudication within a federal administrative agency shares enough of the characteristics of the judicial process that those who participate in such adjudication should also be immune from suits for damages." *Id.* at 512-13. The Court thus extended immunity to the federal officials performing judicial and prosecutorial functions in the agency proceeding, including the hearing examiner who presided over the proceeding, *id.* at 513-14, the officials who initiated and continued the proceeding, *id.* at 515-16, and the agency attorney who presented evidence at the proceeding, *id.* at 516-17.

{40} *Butz* establishes that judicial immunity may extend to adjudicatory proceedings in the executive branch if those proceedings share sufficient "characteristics of the judicial process" so as to implicate the policies justifying absolute immunity from suit. 438 U.S. at 512-13. The "characteristics of the judicial process" that *Butz* deemed relevant include (1) the need to insulate individuals performing tasks integral to the proceeding from harassment or intimidation, (2) the presence of safeguards that "reduce the need for private damages actions" to control "unconstitutional conduct," (3) the decision-maker's insulation from political influence, (4) "the importance of precedent in resolving controversies," (5) the adversarial nature of the proceeding, and (6) "the correctability of error on appeal."

*Id.* at 512; *see also Cleavinger*, 474 U.S. at 202 (summarizing the factors considered by *Butz*). While no one factor is dispositive, *Butz*'s six factors provide a comprehensive framework for deciding whether an adjudicatory proceeding is sufficiently judicial in nature so as to warrant immunity from damages suits. We, therefore, adopt *Butz*'s factors as the method for deciding whether judicial immunity attaches to an adjudicatory proceeding in New Mexico's executive branch.

**b.      Considerations relevant to the judicial nature of the conduct**

{41}     In addition to determining that immunity attaches to an adjudicatory proceeding, a court must also consider whether the conduct challenged in the claim is judicial in nature. Judicial immunity protects individuals and governmental entities from liability when functioning as an "'arm of the court'" or, in other words, when performing a function that is integral to a judicial or quasi-judicial proceeding. *Collins*, 1991-NMSC-013, ¶¶ 16, 19; *see also Butz*, 438 U.S. at 513 (extending immunity to a federal hearing examiner because the examiner's role "is 'functionally comparable' to that of a judge"). For example, a guardian ad litem performs a judicial function when assisting a court to adjudicate the best interests of a child. *Collins*, 1991-NMSC-013, ¶ 16. However, immunity does not extend to conduct that is not a judicial function, *id.* ¶ 27, such as when the conduct amounts to an administrative act, or when the conduct is taken "in the clear absence of all

28

jurisdiction." *Stump v. Sparkman*, 435 U.S. 349, 356-57, 361 n.10 (1978) (internal quotation marks and citation omitted).

{42} Whether a claim of immunity for conduct that challenges a judicial function is a question of law for a judge or is a question of fact must be decided based on the circumstances presented. *Collins*, 1991-NMSC-013, ¶ 40. In some circumstances it may be clear that a claim challenges a judicial function. *See Kimbrell*, 2014-NMSC-027, ¶ 17 (concluding that a guardian ad litem clearly functions as an "arm of the court" when assisting in custody determinations). In other circumstances, a limited factual inquiry may be necessary to determine whether and to what extent a claim challenges a judicial function. *See Collins*, 1991-NMSC-013, ¶¶ 41-42 (remanding for a limited factual inquiry into the nature of the guardian ad litem's appointment with respect to a tort claim settlement and the extent to which the guardian ad litem's conduct fell within the scope of that appointment).

{43} We see a limited factual inquiry as important in the context of a CRA claim. Under the CRA, a public body may be made vicariously liable for acts and omissions of individuals acting on its behalf, § 41-4A-3(C), some of whom may or may not be performing judicial functions. A court considering a public body's entitlement to judicial immunity should, therefore, carefully parse the challenged conduct to determine whether and to what extent that conduct consists of a judicial function.

29

Judicial immunity will protect a public body from liability only when both the nature of the proceeding and the nature of the challenged conduct merit absolute protection from suit.

**B.     The Court of Appeals Erred in Holding That NMRC Is Immune**

{44}     Because the district court concluded the defense of judicial immunity is unavailable to NMRC, the district court made no findings relevant to either the nature of NMRC's adjudicatory proceedings or the nature of any conduct challenged in Bolen's CRA claim. The Court of Appeals nonetheless concluded that NMRC is immune under the facts and circumstances of the case. *See Bolen*, 2024-NMCA-056, ¶¶ 13-27. We reverse the Court of Appeals in this regard.

{45}     In deciding NMRC's immunity, the Court of Appeals relied on a three-part formula adopted by the Tenth Circuit in *Horwitz*, 822 F.2d at 1513. *Bolen*, 2024-NMCA-056, ¶ 17. According to *Horwitz*, judicial immunity applies when "the following formula is satisfied: (a) the officials' functions must be similar to those involved in the judicial process, (b) the officials' actions must be likely to result in damages lawsuits by disappointed parties, and (c) there must exist sufficient safeguards in the regulatory framework to control unconstitutional conduct." *Horwitz*, 822 F.2d at 1513. Applying this formula, the Court of Appeals decided NMRC is immune because (a) NMRC's actions in initiating a proceeding, holding

a hearing, taking evidence, and entering findings pursuant to its regulations are similar to the actions of those involved in the judicial process, *Bolen*, 2024-NMCA-056, ¶¶ 22, 25, (b) a federal district court has previously recognized that NMRC is subject to a large number of lawsuits, which may interfere with independent decision-making, *id.* ¶ 26, and (c) NMRC's administrative rules, and especially 15.2.1.9(A) NMAC, set forth procedural safeguards applicable to the disciplinary action at issue, and Bolen did not clearly contest the existence of sufficient procedural safeguards. *Id.* ¶ 27.

{46}    The formula applied by the Court of Appeals is similar to the factors we considered in *Kimbrell*, 2014-NMSC-027, ¶¶ 12-13, in deciding that immunity extended to a guardian ad litem helping a court make custody determinations. However, as discussed above, *Kimbrell* does not fully encapsulate the analysis we deem necessary when deciding whether judicial immunity attaches to an adjudicatory proceeding in the executive branch. Henceforth, our state courts should more fully examine the judicial nature of an administrative agency's adjudicatory proceedings using *Butz*'s six factors before determining the judicial nature of the challenged conduct.

{47}    As the Court of Appeals did not have the benefit of the framework we elucidate in this opinion, the Court of Appeals' analysis is incomplete. The parties'

briefing and arguments on certiorari also do not sufficiently address either the nature of NMRC's proceedings or the nature of NMRC's conduct such that we could complete this analysis. The parties should be given a full opportunity to address these issues before NMRC's entitlement to immunity is decided. Moreover, in his arguments before this Court, Bolen disputes whether the conduct challenged in his CRA claim consists of a judicial function. This dispute presents factual issues which must be resolved in the first instance by the district court. *See Collins*, 1991-NMSC-013, ¶¶ 40-41 (explaining that whether a defendant was performing a function entitled to immunity, and whether that immunity was absolute, depends on the facts and circumstances presented). We, therefore, remand this matter to the district court for further proceedings in conformance with our opinion.

**IV. CONCLUSION**

{48} The CRA expressly preserves judicial immunity as a defense. Section 41-4A-10. Judicial immunity is justified by public policies supporting independent decision-making and ensuring the integrity of a judicial or quasi-judicial process. These policies apply to both individuals and governmental entities performing judicial functions. We, therefore, affirm the Court of Appeals insofar as it reversed the district court and held that judicial immunity is available to a public body in defense of a CRA claim. We reverse the Court of Appeals insofar as it determined

32

that NMRC is immune to Bolen's CRA claim. Instead, the district court must first decide whether and to what extent NMRC is immune using the framework set forth in this opinion. We remand this matter to the district court.

{49}    **IT IS SO ORDERED.**

_____

**BRIANA H. ZAMORA, Justice**

**WE CONCUR:**

_____

**DAVID K. THOMSON, Chief Justice**

_____

**MICHAEL E. VIGIL, Justice**

_____

**C. SHANNON BACON, Justice**

_____

**JULIE J. VARGAS, Justice**